# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1437V
Filed: November 20, 2025

```
* * * * * * * * * * * * *   *
LISSETTE LIMONTA,           *
                            *
            Petitioner,     *
                            *
v.                          *
                            *
SECRETARY OF HEALTH         *
AND HUMAN SERVICES,         *
                            *
            Respondent.     *
* * * * * * * * * * * * *   *
```

*Robert Hanreck, Esq.*, Robert J. Hanreck, P.A., Miami, FL, for petitioner.
*Emilie Williams, Esq.*, U.S. Dept. of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On September 20, 2018, Lissette Limonta ("Ms. Limonta" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that she suffered "anaphylaxis, angioneurotic edema, [and] swelling of the face, tongue and lips" as a result of the October 6, 2015 influenza ("flu") vaccine and thereafter continued to suffer reoccurrences of her symptoms. *See* Petition, ECF No. 1. The matter was dismissed for failure to satisfy the severity requirement on January 27, 2025. ECF No. 77.

Petitioner seeks an award of final attorneys' fees and costs, requesting a total of **$31,300.80**, representing $24,669.50 in attorneys' fees and $6,631.30 in costs. Motion for Fees, ECF No. 80. Respondent filed his response on August 20, 2025, deferring to the undersigned to determine whether petitioner satisfied the statutory requirements for an award of fees. Response,

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

ECF No. 81.

After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part** for the reasons set forth below.

## I.     Procedural History

The petition was filed on September 20, 2018 along with several medical records and photographs. Petitioner's Exhibits ("Pet. Ex.") 1-6, ECF No. 1. The matter was initially assigned to the Special Processing Unit ("SPU"). ECF No. 4.

Respondent filed his Rule 4(c) Report on September 27, 2019, arguing that petitioner could not satisfy the requirements for a Table claim of anaphylaxis and that she did not meet the six-month severity requirement. ECF No. 23.

Following the filing of additional medical records requested in respondent's Rule 4(c) Report, the matter was reassigned to the undersigned on April 3, 2020.  Pet. Ex. 27-30, ECF Nos. 25-30.

At a status conference held on September 30, 2020, the issues in this case were discussed in detail, specifically that petitioner did not meet the requirements for Table anaphylaxis as alleged and it did not appear that she satisfied the six-month severity requirement to sustain an off-Table claim. In response, petitioner's counsel stated that her treating physician, Dr. De La Cruz, kept petitioner on medication to prevent any flares and to suppress her symptoms. A detailed Order issued, and petitioner was provided sixty days within which to file a report from Dr. De La Cruz. ECF No. 35.

Petitioner filed a status report on December 1, 2020, informing the Court that Dr. De La Cruz had been hospitalized for Covid-19 and, as such, was not able to respond to petitioner's request. ECF No. 37.

Another status conference was held on March 3, 2021, wherein petitioner's counsel advised that Dr. De La Cruz had unfortunately passed away. Petitioner was then ordered to file a report from her new treating allergist, Dr. Nunez, which addressed the episodes of angioedema she claimed occurred after her initial reaction to the subject vaccination, as well as the medication prescribed to treat petitioner's alleged anaphylaxis and/or angioedema. ECF No. 40. After the issuance of a subpoena, Dr. Nunez's opinion letter was filed on June 1, 2021. Pet. Ex. 38, ECF No. 47.

In response to Dr. Nunez's opinion letter, on July 1, 2021, respondent filed a status report, maintaining his position that this case was not compensable and asked that it proceed on a litigation track. ECF No. 48.

A status conference was held on August 12, 2021, during which I summarized all the evidence that had been filed, including Dr. Nunez's opinion letter, noting that there was no documentation to support the six-month requirement. Specifically, it was noted that "Dr. Nunez's

2

opinion does little to satisfy the severity requirement." As documented in the Order that issued after the conference, "I advised counsel that the appropriate course of action would be for petitioner to voluntarily dismiss her claim, though it does not appear that petitioner is willing to do so." Thus, respondent was ordered to file an expert report responding to Dr. Nunez's opinion letter; and petitioner was ordered to file either a response from Dr. Nunez to respondent's expert report or a status report, advising how she wanted to proceed. ECF No. 49.

Respondent filed his expert report from Dr. Fadugba on November 30, 2021. Respondent's Exhibit ("Resp. Ex.") A, ECF No. 54.

On December 14, 2021, petitioner filed a status report, requesting the Court's permission to retain Dr. Gershwin as an expert and claiming that "[p]etitioner is at a disadvantage not having been permitted to retain an expert witness and needs to be able to retain an expert witness in order to be able to properly respond to the [r]espondent's expert's report." She further argued that Dr. Nunez's opinion letter supports that petitioner suffered her vaccine injury in excess of six months. ECF No. 55.

An Order issued the same day addressing petitioner's status report. It was noted, among other things, that "the only two hospital records of hospital visits filed in this matter are for a visit on the day of vaccination and a visit on November 9, 2015, one month after vaccination, at which time she was noted to have facial and lip swelling and was administered IV steroids and antihistamines." Further, it was noted that the "fact remains that for a period of 19 months, between February 10, 2016 and September 21, 2017, petitioner did not present to any medical provider for her alleged injury or for anything else, did not follow up regarding the medications she was prescribed in October 2015 and whether they were still necessary, and has only her word, with no corroborating medical evidence of any ongoing sequela, to satisfy the six-month statutory requirement." Counsel was advised that the severity requirement remains at issue but that the Court "will neither permit nor forbid petitioner from retaining Dr. Gershwin." A deadline was then set for petitioner to file an expert from Dr. Gershwin, should she choose to retain him. ECF No. 56.

On December 30, 2021, petitioner filed her first motion for interim attorneys' fees and costs. ECF No. 57. In his response to petitioner's first motion for interim fees, respondent raised reasonable basis. ECF No. 62. Given respondent's raising of reasonable basis, petitioner's motion for interim fees was deferred. ECF No. 64.

Petitioner filed an expert report from Dr. Gershwin on February 10, 2022. Pet. Ex. 39-43, ECF No. 59. Respondent filed a responsive report on June 10, 2022. Resp. Ex. M, ECF No. 63.

Petitioner filed a Motion for a Ruling on the Six-Month Severity Requirement on December 7, 2022. ECF No. 70. Respondent filed his response to the motion on March 21, 2023. ECF No. 72. Petitioner filed a reply on March 28, 2023. ECF No. 73.

Petitioner then filed a second motion for interim attorneys' fees and costs on October 11, 2024. ECF No. 74. Respondent again raised an objection to reasonable basis. ECF No. 75. Petitioner filed a reply, stating that "Respondent's Response does not appear to have any case

3

specific substantive objections to the request for interim attorneys' fees and costs as to which Petitioner can reply." ECF No. 76.

A decision dismissing the petition issued on January 27, 2025. ECF No. 77.

Petitioner filed the instant motion for final attorneys' fees and costs on June 12, 2025.[3] ECF No. 80. Respondent filed his response on August 20, 2025—almost two months past the deadline—again raising reasonable basis. ECF No. 81. Petitioner did not file a reply but filed a statement of petitioner's personal costs on September 4, 2025. ECF No. 82.

This matter is now ripe for a decision on fees.

## II.     Factual Background[4]

### A.  Summary of Relevant Medical Records

Petitioner received the subject flu vaccine on October 6, 2015 at approximately 6:30am. Pet. Ex. 1. Ten hours later, at 4:41pm, she presented to the ER with swelling of her lips and the right side of her face. Pet. Ex. 21 at 3, 5, 6, 42. She was diagnosed with angioedema "probably secondary to influenza vaccine" and prescribed prednisone, Pepcid/famotidine, Zyrtec/cetirizine, and an EpiPen. *Id.* at 24, 42-43; *see also* Pet. Ex. 3.

One month later, on November 9, 2015, petitioner presented to the ER reporting facial and lip swelling since the night before. Pet. Ex. 4 at 1, 9. Her diagnosis was angioneurotic edema. *Id.* at 29.

Petitioner presented to her allergist, Dr. De La Cruz on November 23, 2015, for "follow up of allergic reaction" with no new symptoms. Pet. Ex. 28 at 1. Dr. De La Cruz's diagnosis was allergic reaction and angioedema. She was instructed to continue taking antihistamines (cetirizine and Pepcid). *Id.* at 2.

Petitioner returned to Dr. De La Cruz on December 15, 2015. Examination that day was normal specifically documenting no acute lesions or rash. She was to continue with her previously prescribed medications. Pet. Ex. 6 at 3-4; *see also* Pet. Ex. 28 at 3-4.

Petitioner presented to Dr. Valdespino on February 10, 2016 reporting a history of hospitalization for "acute angioedema (facial, tongue)". Pet. Ex. 9 at 10. She presented six additional times for medical care in 2016 with no additional episodes of angioedema, rash, or urticarial lesions reported or documented.

She presented on November 3, 2016 for lab work. The list of "active medications" included cetirizine and hydroxyzine, among others. Pet. Ex. 9 at 4.

---

[3] Upon review of all three motions for fees, the instant motion appears to be comprehensive.
[4] The decision dismissing petitioner's claim contains a more detailed summary of the evidence filed in this case. The summary herein is abbreviated for the purpose of deciding petitioner's motion for final fees.

4

She returned to Dr. De La Cruz on September 21, 2017, 21 months since she was last seen. Examination was normal; she was to continue with the same medications. Pet. Ex. 6 at 5-6; Pet. Ex. 28 at 5-6.

Three years later, petitioner presented to Dr. Nunez as a new patient on November 17, 2020. Pet. Ex. 35 at 1. The record reflects a history provided by petitioner that included lip angioedema following a flu vaccine in 2015 with three recurrent episodes over the next several months. She was prescribed cetirizine, hydroxyzine, and famotidine and "has been compliant with the above regimen since 2015" despite being asymptomatic for more than one year. *Id.* at 2. Dr. Examination on that day showed no rashes and no edema. *Id.* at 3. Dr. Nunez documented that she had been asymptomatic for over one year, so he discontinued the medications. *Id.* at 6.

At her follow-up visit with Dr. Nunez on December 15, 2020, petitioner reported doing well with no symptoms of angioedema since discontinuing the medication. Pet. Ex. 35 at 15-17.

### B. Affidavit of Petitioner

In an affidavit dated October 18, 2020, petitioner affirmed receiving a flu vaccine at work on October 6, 2015 at approximately 6:30am. Pet. Ex. 36 at 1.

She affirmed that when she got home the day of the vaccine, her face and lips were inflamed and swollen. She was diagnosed with angioedema caused by an allergic reaction to the flu vaccine at Palm Spring General Hospital. Pet. Ex. 36 at 1. According to petitioner, the nurse in charge of epidemiology sent a report to the vaccine manufacturer advising of her reaction, but she was unable to obtain a copy of the report from her employer. *Id.* at 1-2.

Petitioner affirmed having suffered several other episodes of angioedema in the month following October 6, 2015. Pet. Ex. 36 at 2. She presented to the ER on November 9, 2015 for an episode and was admitted "due to [her] life being in danger." *Id*.

According to petitioner, she continues to "receive treatments to relieve the episodes of angioedema resulting from [her] allergic reaction to the flu vaccine". Pet. Ex. 36 at 2.

### C. Dr. Nunez's Opinion Letter

In May of 2021, Dr. Nunez authored a letter documenting that at petitioner's first visit with him on November 17, 2020, she reported a "history of chronic urticarial lesions with angioedema" after a flu vaccine. Pet. Ex. 38 at 1. "Patient stated multiple episodes of angioedema with concurrent urticarial lesions for 'several months.' Patient also reported that urticarial lesions persisted, although at the time of our initial consultation patient had been free of urticarial lesions for >1 year." *Id*.

Dr. Nunez described petitioner's treatment with cetirizine, hydroxyzine, and famotidine following her allergic reaction "as the minimum treatment which controlled symptoms with infrequent breakthrough urticarial lesions." Pet. Ex. 38 at 2. He added that the duration of treatment with these medications was "not inconsistent with management of chronic urticaria with

5

angioedema". *Id*. He concluded that given petitioner's reports of breakthrough urticarial lesions while compliant with medication, it was medically prudent to continue or even step-up therapy until she reported control without breakthrough lesions, at which time weaning would be appropriate. *Id*. at 3.

### D. Dr. Gershwin's Opinion

Dr. Gershwin would not comment on the six-months issue. Pet. Ex. 39 at 2. He provided only that angioedema following flu vaccine is well documented in medical literature. He further wrote that in virtually all cases of angioedema, Zyrtec/cetirizine would be prescribed to be taken on a daily basis to prevent acute episodes of angioedema. *Id.*

### III. Parties' Arguments

#### A. Petitioner's Motion

Petitioner provided a summary of the case, specifically detailing counsel's work on this matter. Motion for Fees at 2-3. Petitioner argued that "[t]his case was brought in good faith and with a reasonable basis for the claim where after being injected with an Influenza vaccination, as required by her employer, at Larkin Hospital on October 6, 2015, the Petitioner suffered significant injuries including, but not restricted to, angioneurotic edema, swelling of the face, tongue, and lips." *Id*. at 2.

The motion included billing records, the section of the Vaccine Act pertaining to attorneys' fees and costs, and several cases that discuss attorneys' fees and costs. *See generally* Motion for Fees; *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343 (Fed. Cir. 2008); *Saxton v. Sec'y of Health & Human Servs*., 3 F.3d 1517 (Fed. Cir. 1993); *Lemay-Assh v. Sec'y of Health & Human Servs*., No. 19-1284V, 2025 WL 1503587, at *1 (Fed. Cl. Spec. Mstr. May 1, 2025); *James-Cornelius v. Sec'y of Health & Human Servs*., 984 F.3d 1374 (Fed. Cir. 2021); *Blum v. Stenson*, 465 U.S. 886 (1984).

#### B. Respondent's Response

Respondent argued that nothing in the Vaccine Act or Vaccine Rule 13 requires that he file a response to a request for an award of attorneys' fees and costs. Response at 1. However, he deferred to the Court on whether the statutory requirements for an award of attorneys' fee and costs were met. *Id*. at 2.

### IV. Legal Standard

#### A. Good Faith

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

6

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Since good faith was not raised by respondent, it will not be addressed, and petitioner is afforded the presumption of good faith in the filing of her petition.

### B. Reasonable Basis

Reasonable basis, however, is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). When determining if a reasonable basis exists, special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). The Federal Circuit concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons*, 875 F.3d at 636. Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa*, 138 Fed. Cl. at 289.

Reasonable basis is satisfied when there is a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020); s*ee Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a scintilla looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Human Servs.,* 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

In discussing the reasonable basis requirement in *Cottingham*, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
(3) sustained (or had significantly aggravated) an injury set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

7

> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
>
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." § 300aa-13(a)(1). However, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius*, 984 F.3d at 1379-80. While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons,* 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.,* No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Human Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

## V. Discussion

### A. Reasonable Basis

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham*, 971 F.3d at 1345-46. Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 154 Fed. Cl. at 795 (quoting *Sedar*, 988 F.3d at 765). The Federal Circuit explained in *James-Cornelius* that affidavits or sworn statements may provide objective evidence supporting a claim in the Vaccine Program. *James-Cornelius*, 984 F.3d at 1380-81.

Respondent did not present any specific arguments regarding reasonable basis. *See* Response. Based on the contemporaneous medical records, petitioner's affidavit, and the expert opinions, I find that petitioner provided sufficient evidence to support her claim for purposes of satisfying the reasonable basis requirements.

The medical records show that petitioner had an episode of angioedema 10 hours after her flu vaccination. Pet. Ex. 21 at 3, 5, 6, 42. She was diagnosed with angioedema, "probably secondary to influenza vaccine," and prescribed prednisone, Pepcid/famotidine, Zyrtec/cetirizine, and an EpiPen. *Id.* at 24, 42-43; *see also* Pet. Ex. 3.

8

She had a second episode of angioedema on November 9, 2015. Pet. Ex. 4 at 1, 9. When she followed up with her allergist Dr. De La Cruz on November 23, 2015, and again on December 15, 2015, she was instructed to continue taking cetirizine, Pepcid, and hydroxyzine pamoate prescribed. Pet. Ex. 28 at 1-4; Pet. Ex. 6 at 3-4. At a visit on November 3, 2016 for lab work, her "active medications" included cetirizine and hydroxyzine. Pet. Ex. 9 at 4. In her affidavit, she affirmed that she continued to "receive treatments to relieve the episodes of angioedema resulting from [her] allergic reaction to the flu vaccine". Pet. Ex. 36 at 2.

Dr. Gershwin and Dr. Nunez both opined that continued use of medications such as cetirizine, hydroxyzine, and famotidine is consistent with the treatment of chronic angioedema. Pet. Ex. 38 at 2-3; Pet. Ex. 39 at 2. Further, Dr. Gershwin submitted that angioedema following flu vaccine is well-documented in the medical literature. Pet. Ex. 39 at 1-2.

Though the evidence that petitioner continued taking medications prescribed for angioedema for over six months post-vaccination was insufficient to meet the preponderance of evidence standard to satisfy the severity requirement, that evidence is sufficient to satisfy her burden in proving reasonable basis. Upon initial presentation the day of vaccination, she was diagnosed with angioedema, "probably secondary to influenza vaccine". Pet. Ex. 21 at 24, 42-43. Dr. Gershwin provided additional support for the link between angioedema and flu vaccination. Pet. Ex. 39 at 1-2. There were significant issues in this case as to whether petitioner's symptoms continued in excess of six months and her claims were based on her word alone with no corroborating evidence other than her statements to Dr. Nunez years later when reporting her history. Nevertheless, while petitioner's evidence was insufficient to prove the severity requirement, it was evidence beyond a mere scintilla to support reasonable basis. Pet. Ex. 9 at 4; *see also* Pet. Ex. 6 at 5-6 (Dr. De La Cruz instructing petitioner to continue with her medications during a follow up on September 21, 2017 for "Angioedema, sequela"); Pet. Ex. 35 at 1-2 (reporting to Dr. Nunez on November 17, 2020 that she suffered lip angioedema following flu vaccine in 2015 with three recurrent episodes over the next several months and that she was prescribed cetirizine, hydroxyzine, and famotidine and "has been compliant with the above regimen since 2015").

Reasonable basis is an objective inquiry based on the record, irrespective of counsel's conduct. *Simmons*, 875 F.3d at 636. I find that the records filed in this matter—as detailed above—were just barely sufficient to satisfy reasonable basis. That said, it is worth noting that petitioner's counsel has filed only two claims in the Vaccine Program, this being one. To that end, special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the special master stated in *Iannuzzi v. Sec'y of Health & Human Servs.*:

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is *not* to benefit the *attorneys* involved, but to *ensure that Vaccine Act petitioners will have adequate access to competent counsel*. . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases.

9

No. 02-780V, 2007 WL 1032379, at *11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance).

### VI. Attorneys' Fees and Costs Calculation

#### A. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[5]

Petitioner requests an hourly rate of $400.00 on behalf of attorneys Mr. Hanreck and Ms. Michelle Williams for their work on this case during its pendency. She also requests an hourly rate of $135.00 on behalf of paralegals at the firm. Motion for Fees at 4. The requested rates for 2021 through 2025 are within the range provided in the Fee Schedule, and I find them to be reasonable. However, the rates for 2018 through 2020 require adjustment. In their only other case in the Program, Mr. Hanreck's and Ms. Williams' rates were set, and they were awarded an hourly rate of $350.00 for work performed in 2018 through 2020; paralegals at the firm were awarded a rate of $80.00 for the same timeframe. *See Rehfeld v. Sec'y of Health & Human Servs.*, No. 16-1048V, 2018 WL 4090665, at *1 (Fed. Cl. Spec. Mstr. Aug. 1, 2018); *Rehfeld v. Sec'y of Health & Human Servs.*, No. 16-1048V, 2021 WL 688108, at *1 (Fed. Cl. Spec. Mstr. Jan. 19, 2021). The Vaccine Rules require that once a rate has been established for particular year or years, that is the rate to be

---

[5] The OSM Attorneys' Forum Hourly Rate Fee Schedules are available on the U.S. Court of Federal Claims website at https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

used for that year. Thus, I will award the rates as previously awarded for years 2018 through 2020, resulting in a **reduction of $1,801.50**.[6]

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08–756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the billing records, the entries adequately describe the work performed, and the time billed corresponds with that work. I have not found any entries to be objectionable, nor has respondent raised any specific objection. Thus, the hours spent on this matter are reasonable.

Petitioner is therefore awarded final attorneys' fees of **$22,868.00.**

### C. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner affirmed that she did not incur any personal costs associated with this claim. ECF No. 82. Petitioner requests a total of $6,631.30 in costs incurred by her counsel. Motion for Fees at 4-5. Some of the costs are associated with medical records requests and for process servers to serve subpoenas. These costs

---

[6] ($400 x 15.8 hours) + ($400 x 10 hours) + ($135 x 9.3 hours) = $11,575.50. ($350 x 15.8 hours) + ($350 x 10 hours) + ($80 x 9.3 hours) = $9,774.00. $11,575.50 - $9,774.00 = $1,801.50.

are routinely awarded in vaccine cases and are supported by the receipts filed.[7] ECF No. 57 at 6-10. Thus, they are awarded in full.

The remaining costs are associated with petitioner's experts' opinions from Dr. Nunez and Dr. Gershwin. Motion for Fees at 5. Dr. Nunez charged a total of **$1,500.00** for 3 hours of work, making his hourly rate $500.00. ECF No. 57 at 42. This was Dr. Nunez's first case in this Court; thus, a reasonable rate has not been determined. However, Dr. Nunez is petitioner's treating allergist, and other experts in immunology/allergy in the Program have been awarded an hourly rate of $500.00. *See Prepejchal v. Sec'y of Health & Human Servs.*, No. 15-1302V, 2019 WL 2296774, at *3 (Fed. Cl. Spec. Mstr. Apr. 15, 2019); *Gambrill v. Sec'y of Health & Human Servs.*, No. 17-105V, 2018 WL 6787629, at *7 (Fed. Cl. Spec. Mstr. Nov. 29, 2018). Three hours spent on this matter is reasonable. Thus, the costs associated with Dr. Nunez's opinion letter are awarded in full.

Dr. Gershwin charged a retainer of $5,000.00. An invoice was not submitted on behalf of Dr. Gershwin, likely because the work did not exceed the cost of his retainer. ECF No. 57 at 43-44. Dr. Gershwin's retainer has been awarded in prior cases. *See, e.g., Rogan on behalf of T.R. v. Sec'y of Health & Human Servs.*, No. 17-1916V, 2020 WL 5814285, at *3 (Fed. Cl. Spec. Mstr. Sept. 4, 2020) (awarding two retainers on behalf of Dr. Gershwin, each $2,500.00). Dr. Gershwin's report reflects the files he reviewed to prepare his report and notes that he reviewed the literature submitted by respondent's expert. *See* Pet. Ex. 39. I find this work reasonable. Thus, I will award the costs associated with Dr. Gershwin.

Petitioner is therefore awarded total costs of **$6,631.30.**

### VII.   Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part.** Petitioner is hereby awarded a total of **$29,499.30,** representing **$22,868.00** in attorneys' fees and **$6,631.30** in costs, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement. The pending motion for interim attorneys' fees and costs (ECF No. 74) is **MOOT**.

The Clerk of Court is directed to enter judgment in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[7] The receipts can be found in petitioner's first motion for interim fees.
[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.